**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ABDIKHALAQ MOHAMED ALI #A241-031-022** | **CASE NO.  1:25-CV-00419 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JUSTIN WILLIAMS ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM ORDER**

Before the Court is a Motion for Temporary Restraining Order [Doc. No. 14] filed by Plaintiff Abdikhalaq Mohamed Ali ("Ali"). The United States of America (the "Government") filed a Response [Doc. No. 19], and Ali filed a Reply [Doc. No. 21].

For the reasons set forth below, Ali's Motion is **DENIED**.

## I.      FACTUAL BACKGROUND

On or about March 16, 2023, U.S. Customs and Border Protection ("CBP") encountered Ali at the San Ysidro Port of Entry carrying a fraudulent passport.[1] The following month, the Department of Homeland Security ("DHS") sent Ali a Notice to Appear, charging him as removable due to his failure to possess a valid immigrant visa, border crossing identification card, or reentry permit.[2] Ali applied for asylum, his case was tried, and on March 1, 2024, Ali was ordered removed to Somalia.[3] Throughout this time, Ali has maintained that he is a Somali national,[4] whereas the

---

[1] [Doc. No. 12, ¶ 1].
[2] [Id].
[3] [Doc. No. 14-6].
[4] [Doc. No. 14, p. 1].

Government has alleged that Ali's Somalia travel documents were fraudulent,[5] and he is actually a native and citizen of Ethiopia.[6]

Ali filed his first application to the Temporary Protective Status Program ("TPS") on August 27, 2024, which was denied due to failure to appear to a USCIS-mandated biometrics scanning.[7] However, Ali asserts that his detention precluded him from appearing to the scanning.[8] ICE requested travel documents from Ethiopia on February 13, 2025, and Ethiopia issued a second travel document for Ali's removal on March 21, 2025.[9] On March 31, 2025, Ali filed a Writ of Habeas Corpus and amended it on April 11, 2025[10]—a little over a month before his scheduled removal from the United States.[11] On May 12, 2025, Ali refused to comply during the airplane boarding process.[12] As a result of the incident, Ali was notified that his removal date would be rescheduled and would occur "within the next 30 days."[13]

On July 14, 2025, Ali applied for another TPS.[14] The application remains pending. The next day at 5:58 p.m., Ali's counsel was notified that Ali would be removed to Ethiopia on July 16, 2025.[15] The following morning, Ali filed this Motion seeking to stop his deportation, and alleging that all requirements of a temporary restraining order ("TRO") are met. After a short extension and a halt of removal

---

[5] [Doc. No. 11-1, p. 2].
[6] [Doc. No. 11, p. 2].
[7] [Doc. No. 14-20].
[8] [Doc. No. 14-1, p. 2-3].
[9] [Doc. No. 12, ¶ 6].
[10] [Doc. Nos. 1, 3].
[11] [Id. at ¶ 19].
[12] [Id. at ¶ 20].
[13] [Id. at ¶ 21].
[14] [Doc. No. 14-21].
[15] [Doc. No. 14-1, p. 3].

pending a ruling on the TRO, the Government filed its response to the TRO, and Ali filed a reply.

The issues have been briefed, and the Court is prepared to rule.

## II.    STANDARD OF REVIEW

A party may seek a temporary restraining order to "preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976). To warrant such relief, the movant must satisfy the same four elements required for a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). However, the last two factors "merge" when the Government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A temporary restraining order is a "an extraordinary and drastic remedy" and should only be granted when the movant has satisfied all four factors. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). So when "a party fails to meet *any* of the four requirements," the Court must deny the TRO. *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 607 (N.D. Tex. 2006). Likewise, granting such requests should "be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

Ali contends that all requirements of a TRO are met. First, Ali claims that he cannot be removed during the pendency of his TPS application under law. Second, Ali argues that he is entitled to challenge his removal to Ethiopia based on a fear of being removed there. Additionally, Ali believes that if removal is imminent, Somalia should be his destination.[16] The Government asserts that, despite Ali claiming to be a citizen of Somalia, Somalia has not issued travel documents for his return, whereas Ethiopia has done so on three separate occasions.[17] The Court's inquiry is two-fold: (1) determining whether the Court has jurisdiction to grant the relief that Ali seeks, and (2) if so, determining whether Ali is indeed entitled to such relief. The Court will address each separately.

### A. Jurisdiction

Since the subject-matter jurisdiction of federal courts are limited, courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). The Illegal Immigration Reform and Immigration Responsibility Act of 1996 provides, in pertinent part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

---

[16] [Doc. No. 14].
[17] [Doc. No. 19].

8 U.S.C. § 1252(g). The United States Supreme Court has explained that § 1252(g) relates to "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). "By its explicit terms, § 1252(g) strips courts of subject-matter jurisdiction to review claims 'arising from' a decision or action to execute a removal order against an alien." *Westley v. Harper*, 25-cv-229, 2025 WL 592788, at *4 (E.D. La. 2025) (citation modified). And the statute's purpose was straightforward: Congress sought to "protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders." *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999). In other words, whenever a noncitizen's claim—regardless of how it is presented—challenges the procedure or substance of an agency decision that is "inextricably linked" to a removal order, the federal district court lacks subject-matter jurisdiction. *Duarte v. Mayorkas*, 27 F.4th 1044, 1054–55 (5th Cir. 2022).

However, as all-encompassing as its provisions may seem, the statute has its limitations. *See Reno*, 525 U.S. at 482 (noting that statute does not "cover[] the universe of deportation claims."). Beyond the three discrete actions that the statute protects, "[t]here are of course many other decisions or actions that may be part of the deportation process—" and outside of the statute's purview. *Id.* The statute "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal

orders" *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000) (citation modified). Therefore, courts must determine whether the requested relief seeks falls within the ambit of § 1252(g) and is "precluded from judicial review." *Foster v. Townsley*, 243 F.3d 210, 215 (5th Cir. 2001).

Ali's request for relief fails to thread that fine needle—seemingly *only* challenging his removal. For instance, Ali wants to prohibit the Government "from removing him from the United States while his [second] application for TPS is pending."[18] Likewise, Ali claims that if removed, "he will forever lose his rights under the laws of the United States, his ability to obtain TPS status, and to work and reside with his family in the United States."[19] Bear in mind, it does not appear that Ali seeks to attack his *detainment*. Ali solely raises issues of his imminent *removal*—a discreet action that § 1251(g) strips this Court of the jurisdiction to review. For those reasons, the Court cannot provide Ali the relief he seeks.

### B. Temporary Protected Status

Even if this Court had jurisdiction to review Ali's removal, it would still be in no such place to issue an order because it cannot determine whether Ali has established his prima facie case of eligibility regarding his TPS. Again, a party seeking a TRO is only entitled to such relief after satisfying all four factors. *Anderson*, 556 F.3d at 360. But Ali's claims fails to satisfy the first factor.

The Temporary Protected Status Program ("TPS") was established to "provide[d] humanitarian relief to foreign nationals in the United States who come

---

[18] [Doc. No. 14, p. 1].
[19] [Doc. No. 14-1, p. 9].

from specified countries." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). The program allows the Government to "designate a country for the program when it is beset by especially bad or dangerous conditions…" and the program protects a noncitizen "from removal and authorizes them to work here as long as the TPS designation lasts." *Id*. If a noncitizen "establishes a *prima facie* case of eligibility" for the program, then the noncitizen shall be provided the benefit of TPS status until a final determination is made with respect to the noncitizen's eligibility. 8 U.S.C. § 1254a(a)(4)(B).

In this instance, Ali insists that his application for TPS Somalia is "prima facie eligible and should be approved so long as [the Government does] not once again" interfere with Ali's eligibility.[20] However, Ali has provided no evidence showing that it is the role of this Court to determine whether he has established a prima facie case of eligibility for the program. Admittedly, neither the statute nor its accompanying regulations specify when or how an alien is expected to "establish a prima facie case of eligibility for benefits." *Osman v. Schmidt*, No. 25-CV-286, 2025 WL 870048, at *2 (E.D. Wis. Mar. 20, 2025). Nor do they clarify which entity is responsible for making that determination. *Id*. at *3. "But nothing in the text or history of the statute or the structure immigration law generally suggests that prima facie eligibility is a determination for a federal district court." *Id*. Instead, as embodied in the exhaustion doctrine, the assumption is that *matters are first addressed administratively*." *Id*. (citing cases) (emphasis added).

---

[20] [Doc. No. 14-1, p. 3].

What's more, the need for administrative review is further evidenced by the countless factual disagreements and ambiguities plaguing this suit. In fact, this case is riddled with instances where Ali says one thing and the Government says another. For example, the Government and Ali can't agree on whether he is from Somalia or Ethiopia,[21] whether the Government stymied Ali's initial TPS application, and whether a particular country (if any) issued travel documents.[22] Nor is it clear what documents are fraudulent or not. It is not the Court's responsibility to sparse through the unclear, contested immigration proceedings and facts in deciphering the prima facie eligibility of a pending TPS application.

To the Court's knowledge, no administrative agency has assessed Ali's second TPS application to determine its prima facie eligibility. And the fact that Ali's initial TPS application was denied holds no bearing on the current matter. The focus is on the pending TPS application and its eligibility; the Court is not able to make such a determination. This responsibility lies with the appropriate agency.

## III. CONCLUSION

**IT IS ORDERED** that the Motion for Temporary Restraining Order [Doc. No. 14] is **DENIED**.

**MONROE, LOUISIANA**, this 29th day of July, 2025.

Terry A. Doughty
United States District Judge

---

[21] [Doc. No. 14, Ex. 25-26]; [Doc. No. 14-7 through Doc. No. 14-19].
[22] [Doc. No. 14-20].