**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ABDIKHALAQ MOHAMED ALI #A241-031-022** | **CASE NO. 1:25-CV-00419 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JUSTIN WILLIAMS ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING**

Upon considering the Report and Recommendation of the Magistrate Judge [Doc. No. 35], with Respondents' objections thereto [Doc. No. 38], and Petitioner, Abdikhalaq Mohamed Ali's ("Petitioner"), response to Respondents' objections [Doc. No. 39], and after a *de novo* review of the record, the Court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendations for the foregoing reasons.

## I.    Background

On or about March 16, 2023, U.S. Customs and Border Protection ("CBP") encountered Petitioner, a native citizen of Ethiopia, at the San Ysidro Port of Entry.[1] CBP found Petitioner inadmissible and processed him for expedited removal.[2] The following month, the Department of Homeland Security ("DHS") sent Petitioner a Notice to Appear, charging him as removable since he did not possess a valid immigrant visa, border crossing identification card, or reentry permit.[3] On July 23, 2023, U.S. Immigration and Customs Enforcement ("ICE") reviewed Petitioner's

---

[1] [Doc. No. 11-1, p. 1].
[2] [Id. at p. 1].
[3] [Id. at p. 2].

custody status and found he was a flight risk.[4] He was ordered removed to Ethiopia, which became final on March 2, 2024, after Petitioner failed to lodge an appeal.[5]

On March 26, 2024—a year since his initial apprehension—Petitioner claimed to be a citizen of Somalia and requested to be removed to Somalia.[6] Petitioner was then provided travel documents to Somalia on April 21, 2024.[7] Petitioner, however, refused to complete the travel documents.[8] On May 31, 2024, it was determined that Petitioner's claimed ties to Somalia were fraudulent.[9] ICE then requested travel documents from the Ethiopian Consulate, but Petitioner twice refused to cooperate.[10]

Petitioner was initially scheduled to be removed to Ethiopia on November 12, 2024; but in the interim, he filed an application for Temporary Protected Status ("TPS") in Somalia.[11] On October 10, 2024, Petitioner was issued a Notice of Intent to Deny TPS.[12] ICE then requested a second travel document from Ethiopia, which was issued on March 21, 2025.[13] Petitioner was scheduled to be removed on May 12, 2025.[14] On that day, however, Petitioner resisted ICE officers and refused to board the plane.[15] Due to that incident, Petitioner's removal was rescheduled with the hope of carrying out the removal "within the next 30 days."[16]

---

[4] [Id.].
[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id.].
[9] [Id.].
[10] [Id.].
[11] [Id. at pp. 2–3].
[12] [Doc. No. 34-1, pp. 1, 4–7].
[13] [Doc. No. 11-1, p. 3].
[14] [Id.].
[15] [Id.].
[16] [Id.].

On July 14, 2025, Petitioner applied for another TPS.[17] Once again, Petitioner was issued a Notice of Intent to Deny.[18] This time, Petitioner responded, but his response did not contain the required biometric evidence, and he did not refute the finding that he did not establish *prima facie* eligibility for TPS.[19] In between, Petitioner also filed a Motion for Temporary Restraining Order ("TRO") to prevent his removal while his second TPS application was pending,[20] which the Court denied for lack of jurisdiction.[21] The Court also determined that even if it had jurisdiction, Petitioner "provided no evidence showing that it is the role of this Court to determine whether he has established a prima facie case of eligibility for" TPS.[22]

On November 5, 2025, Petitioner filed a Motion and Memorandum for Ruling on Habeas Relief, which the Court treats as a Motion to Expedite.[23] In it, Petitioner maintains his removal is not reasonably foreseeable because he has provided *prima facie* evidence for granting his application for TPS.[24]

On January 22, 2026, the Magistrate Judge convened an oral argument and ordered supplemental briefing.[25] The parties filed the supplemental briefs,[26] and the Magistrate Judge issued his Report and Recommendation on February 23, 2026.[27]

---

[17] [Doc. No. 14-21].
[18] [Doc. No. 34-1, pp. 1, 9–12].
[19] [Id. at p. 1].
[20] [Doc. No. 14].
[21] [Doc. No. 22, p. 6, 8].
[22] [Id. at p. 7].
[23] [Doc. No. 23].
[24] [Id. at p. 1].
[25] [Doc. No. 30].
[26] [Doc. Nos. 31; 34].
[27] [Doc. No. 35].

Respondents object to the Magistrate Judge's conclusion that Petitioner met his burden of showing that there is no significant likelihood he would be removed in the reasonably foreseeable future and that Respondents did not refute it.[28] Petitioner, naturally, takes the opposite position.[29]

The parties have briefed all relevant issues and the matter is ripe.

## II.    Law and Analysis

### A.    Standard of Review

Petitioner brings a *Zadvydas* challenge. The Court begins—as it must—with the statutory text. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). But the 90-day limit may be extended if an alien does not cooperate in good faith, *see id.* § 1231(a)(1)(C), or if they are inadmissible. *See id.* § 1231(a)(6).

---

[28] [Doc. No. 38-1, pp. 2–8].
[29] [Doc. No. 39, pp. 2–7].

Notwithstanding these statutory time limits, the Supreme Court held, in *Zadvydas v. Davis*, that detention under § 1231 is presumptively reasonable for up to six months. 533 U.S. 678, 701 (2001). After six months, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "Conclusory statements suggesting that removal is not likely in the reasonably foreseeable future are insufficient to make this showing." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705 (W.D. Tex. 2025) (citing *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006)). Once the alien meets this burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

"[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Nevertheless, *Zadvydas* does not require that "every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

### B.    Merits

The Court first determines whether Petitioner has met his burden of proving there is no "significant likelihood of removal in the reasonably foreseeable future." *Id.* Then, the Court examines whether Respondents have—if necessary—rebutted Petitioner's showing.

Respondents do not contest that Petitioner is currently detained beyond the six-month reasonable period. Respondents do contest, however, that Petitioner has shown that his "removal is not likely in the reasonably foreseeable future[.]" *Trejo*, 807 F. Supp. 3d at 705.

On this issue, *Andrade v. Gonzalez* is particularly instructive. There, the Fifth Circuit noted that although the petitioner "had been detained for more than three years," his *Zadvydas* claim "must fail, as his case is distinguishable from *Zadvydas*." 459 F.3d at 543. The Fifth Circuit so held because the "civil confinement" in *Zadvydas* was "not limited, but potentially permanent." *Id.* (quoting *Zadvydas*, 533 U.S. at 691). In *Zadvydas*, "the Government had *thrice failed* to secure the [petitioner's transfer] subject to a final order of removal, and could offer no promise of future success, as all the nations to which the [petitioner] had ties had refused his admission on the ground that he was not a citizen." *Id.* (emphasis added) (citing *Zadvydas*, 533 U.S. at 691). Whereas in *Andrade*, although the petitioner's detention was longer than that in *Zadvydas*, he "offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to [his home country]." *Id.* at 543–44.

The facts here are distant from those in *Zadvydas*. Instead of "the Government [thrice failing] to secure" Petitioner's transfer, Respondents have thrice obtained documents to remove Petitioner[30] and twice attempted to remove Petitioner.[31] Petitioner delayed both attempts by (1) applying for TPS, (2) refusing to sign papers,

---

[30] [Doc. No. 11-1, pp. 2–3].
[31] [Id.].

(3) refusing to board the plane, and (4) filing motions before this Court.[32] Additionally, Respondents note that DHS has a travel document for Petitioner; and even if it cannot be produced before the Court, Ethiopia's issuance of three prior travel documents, despite Petitioner's non-cooperation, creates a "a significant likelihood that Ethiopia will issue a fourth travel document."[33]

The Court agrees. Given Ethiopia's willingness to issue travel documents for Petitioner, time-after-time, Petitioner has not shown—and, therefore, not satisfied his burden—that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court re-emphasizes that the reason Petitioner has not yet been removed is due to his own actions and not due to Respondents' actions.

Petitioner's arguments about his TPS applications precluding his removal are unpersuasive because Petitioner's TPS has now been twice denied.[34] And as stated in the Court's ruling, denying Petitioner's motion for a TRO, Petitioner "has provided no evidence showing that it is the role of this Court to determine whether he has established a prima facie case of eligibility for the program."[35]

Since the Court concludes Petitioner has not met his burden to show there is no significant likelihood of his removal in the reasonably foreseeable future, the Court does not—because it needs not—address whether Respondents have overcome that burden. "[I]f it is not necessary to decide more, it is necessary not to decide more[.]"

---

[32] [Id.]; [Doc. No. 14].
[33] [Doc. No. 38-1].
[34] [Doc. No. 34-1, pp. 1, 4–7, 9–12].
[35] [Doc. No. 22, p. 7].

*PDK Lab'ys., Inc. v. United States DEA,* 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

### III.    Conclusion

For these reasons, the Court **DECLINES TO ADOPT** the Report and Recommendation of the Magistrate Judge [Doc. No. 35]. Accordingly,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] and the Amended Petition for Writ of Habeas Corpus [Doc. No. 3] filed by Petitioner are **DISMISSED WITHOUT PREJUDICE** subject to Petitioner's right to re-urge his claim of prolonged detention if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not significantly likely in the reasonably foreseeable future.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Expedite Decision [Doc. No. 23] is **DENIED AS MOOT**.

MONROE, LOUISIANA, this 1st day of April 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE